IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER KELLY et al.**, | : |
| Plaintiff, | : |
| v. | : CASE NO: 2:25-cv-06234-MKC |
| **THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA**, | : |
| Defendant. | : |

**DEFENDANT'S RESPONSE TO MOTIONS TO APPOINT
INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)**

Defendant The Trustees of the University of Pennsylvania ("Penn") hereby submits this response to the Motions to appoint interim co-lead class counsel (Dkt. Nos. 46 and 51) (the "Motions"). As more fully set forth below, one of the Motions (Dkt. No. 51) is on behalf of counsel who are already fully versed in the relevant underlying incident and are already litigating multiple related matters in ways that will bring efficiency and expediency to the actions related to Penn. Accordingly, while counsel for Penn does not typically take a position on the appointment of interim lead class counsel, the present situation presents stark choices that go to the heart of the Rule 23(g)(1) factors for consideration and the efficient administration of this action under Rule 1 ("[These rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). Because this litigation significantly overlaps with class action proceedings in the Western District of Texas, it makes sense to appoint interim lead counsel here who are already serving as lead counsel in that set of proceedings. Penn therefore believes it is more appropriate to appoint Mark Lanier, Gary M. Klinger, and Jeff Ostrow (the "Lanier Group of Three") (Dkt. No. 51) as interim lead counsel

1

than to appoint David J. Cohen, Gerald D. Wells, III, and Erin Green Comite and their proposed six-member steering committee (the "Cohen Group of Nine") (Dkt. No. 46).

## I. FACTUAL BACKGROUND

### A. The October 31, 2025 Incident.

On October 31, 2025, Penn became aware of unauthorized access to certain of its Department of Alumni Relations ("DAR") systems (the "October 31 Incident"). Penn immediately took steps to terminate the unauthorized access. Realizing that the access was about to end, the unauthorized actor used alumni email lists to send mass emails to Penn's community of students, faculty, alumni, and others (the "October 31 Emails"). Several recipients of these emails began filing lawsuits against Penn, which were eventually consolidated into this action. (*See* Dkt. Nos. 14, 15).

Although the October 31 Emails went to a large group of individuals, the October 31 Incident itself was limited to a small number of specific DAR systems. There was no larger compromise to Penn's network. Upon extensive investigation and analysis of the files involved in the October 31 Incident, Penn sent notices to seven (7) individuals to date as required under applicable state notification laws, none of whom are any of the named plaintiffs in this action. Notably, no named plaintiff has attached to their complaint a copy of a notice received from Penn relating to the October 31 Incident. *See* January 22, 2026 Redacted Notice of Data Security Incident, attached hereto as **Exhibit A**.

### B. The Oracle Incident.

Separately, Penn was affected by a data security incident involving unauthorized access to a third-party Oracle software application (the "Oracle Incident"). Penn uses a third-party software tool called Oracle E-Business Suite ("Oracle EBS") from Oracle, a third-party technology

provider, to process supplier payments, reimbursements, general ledger entries, and to conduct other business. In the Fall of 2025, Oracle announced a previously unknown security vulnerability that could allow unauthorized access to Oracle EBS and data stored in it. This issue impacted hundreds of organizations worldwide that also use Oracle EBS. Upon confirming potential unauthorized access to Oracle EBS, Penn immediately launched an investigation. During its investigation, Penn discovered that some data from Penn's Oracle EBS had been obtained without authorization. As a result, beginning on December 1, 2025, Penn sent notices to a few hundred thousand impacted individuals, notifying them that Penn had determined on November 11, 2025 that their personal information was among the information obtained from Penn's Oracle EBS.

The Oracle Incident is the subject of a large, consolidated class action in the Western District of Texas (the "Oracle Litigation"). On January 5, 2026, U.S. Magistrate Judge Susan Hightower, overseeing the Oracle Litigation, consolidated 33 actions stating claims stemming from the Oracle Incident. (*See* Dkt. No. 51-2 (the "Oracle Consolidation Order") at 9-11.) The Oracle Litigation, as consolidated, names both Oracle and Penn as defendants, alongside numerous other co-defendants similarly affected by the Oracle EBS vulnerability. (*See id.*) The Lanier Group of Three each represent plaintiffs in the Oracle Litigation. They have been investigating the Oracle incident since last Fall. As a result of their work and involvement in the Oracle Litigation, the Lanier Group of Three were appointed interim co-lead counsel in the Oracle Litigation. They have therefore been officially designated to continue to investigate the claims of the class and negotiate with counsel for defendants on all matters, including administration of the action and potential settlement. (*See id.* at 12.)

3

### C. Penn's Discussions with Plaintiffs' Counsel.

Over the course of several weeks in January 2026, Penn conferred with all lead counsel in this litigation and shared that (1) certain individual complaints conflated the October 31 Incident and October 31 Emails with the Oracle Incident, (2) the Oracle Incident was being litigated in the Western District of Texas, and (3) upon investigation, the October 31 Incident was infinitesimally smaller, by the number of individuals affected and thus the size of the potential class, compared to the Oracle Incident. Accordingly, Penn suggested that the litigation in this Court should be dismissed and re-filed in the Western District of Texas, where other related matters were already being litigated. Plaintiffs' counsel were receptive and generally indicated that they would dismiss their cases and refile them in the Western District of Texas to the extent any of their named plaintiffs were among those who received a notice from Penn about the Oracle Incident. As a result, the Court's January 19, 2026 deadline to move to appoint lead counsel passed with no applications submitted. Only when the Court extended the deadline to file a motion for interim class counsel to January 30, 2026 did the Cohen Group of Nine move for appointment as interim co-lead class counsel. The Lanier Group of Three then moved for appointment as interim co-lead counsel in order to coordinate this action with the litigation in the Western District of Texas, including by transferring these actions by stipulation to the Western District of Texas where it belongs. (Dkt. No. 51-1 at 1.) Because transferring this action to the Western District of Texas or, at least severing any claims relating to the Oracle Incident and transferring them to the Western District of Texas, would serve the interests of justice and avoid duplicative work and costs, the Lanier Group of Three should be appointed interim lead counsel.

## II.   ARGUMENT

Efficiency dictates that this action should be led by the same counsel handling the larger Oracle Incident Litigation. Moreover, it should be litigated in the Western District of Texas and thus should be led by the Lainer Group of Three, who stated an intent to transfer this matter and have already been appointed to lead the Oracle Litigation. The Oracle Litigation is moving forward, and plaintiffs are expected to file a consolidated class action complaint by March 6, 2026. *See* Oracle Consolidation Order at 15. Transferring this action to the Western District of Texas would provide Plaintiffs with the potential for complete relief from all necessary defendants, avoid the risk of duplicating judicial effort, and avoid inconsistent results for similar determinations related to discovery, class certification, experts, and ultimately the merits of Plaintiffs' claims. Further, the factors typically considered under both Federal Rule of Civil Procedure 23(g) and 28 U.S.C. §1404(a) all favor the transfer of this action to the Western District of Texas—and, in turn, the appointment of the Lanier Group of Three.

### A. Mandatory and Permissive Factors Under Federal Rule of Civil Procedure 23(g) Weigh in Favor of the Appointment of the Lanier Group of Three.

The factors enumerated in Federal Rule of Civil Procedure 23(g)(1) govern appointment of interim class counsel. *Milkboy Ctr. City LLC v. Cincinnati Cas. Co.*, 2020 WL 7633975, at *3 (E.D. Pa. Dec. 22, 2020). Rule 23(g)(1) requires that, in appointing interim class counsel, this Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A). As a whole, these factors weigh in favor of the appointment of the Lanier Group of Three because of their position as lead counsel in the Oracle Litigation.

First, Rule 23(g)(1)(A)(i), which examines the work counsel has done in identifying and investigating claims in the action, weighs heavily in favor of the appointment of the Lanier Group of Three because they have done substantial work related to the Oracle Incident since last Fall. Conversely, the Cohen Group of Nine entirely fails to address the differences between the October 31 Incident and the Oracle Incident or articulate a plan on how the Court should proceed with complaints conflating two wholly separate Incidents. Their motion states only that this Court is better positioned "to resolve claims against a Philadelphia-based Defendant based on events in Pennsylvania that have affected thousands of Pennsylvania residents." (Dkt. No. 46-1 at 10.) This flatly ignores the fact that the October 31 Incident was small in scope and, more importantly, the concern that this matter involves claims related to the Oracle Incident, which is already being litigated in the Western District of Texas. Their failure to address the complications of the Oracle claims at issue makes clear that the Cohen Group of Nine have insufficiently investigated, or misunderstand, the Oracle claims present in this action.

Second, Rule 23(g)(1)(A)(ii) requires the Court to consider counsel's experience in handling class actions. Penn does not contest that both groups moving for appointment as interim lead counsel are experienced in handling class actions. However, this factor nevertheless leans in favor of the Lanier Group of Three because of their *specific* experience handling the Oracle Litigation.

The considerations of Rule 23(g)(1)(A)(iii) and (iv) are neutral because both groups possess knowledge of the applicable law and will presumably commit appropriate resources to representing the class.

In addition to the compulsory considerations detailed above, Rule 23(g) further states that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). This consideration leans in favor of the Lanier Group of Three because the interests of the class are best served in the Western District of Texas where litigation is proceeding and plaintiffs would have access to all defendants allowing Plaintiffs to leverage the economies of scale to reduce duplicative discovery and streamline motion practice in a way that meaningfully advances the action while avoiding duplicative costs and effort. The Lanier Group of Three recognize this reality, demonstrating that they are capable of adequately representing the interests of the class. And, given that Penn may be asked to bear some or all of the fees of Plaintiffs' counsel in a settlement or in the unlikely event Plaintiffs ultimately succeed on their claims, *see, e.g.*, Dkt. No. 12 at 55 (seeking attorneys' fees, expenses, and costs), the efficiencies resulting from the appointment of the Lanier Group of Three are likely in Penn's direct interest as well.

### B. Pursuant to 28 U.S.C. § 1404(a), this action should be transferred to the Western District of Texas.

The appointment of The Lanier Group of Three is also appropriate because, as they recognize, this action should be transferred to the Western District of Texas. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The transfer statute aims to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation marks and citation omitted), *superseded by statute on other grounds*. Section 1404(a) "place[s] discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness" and calls

7

on courts to balance a number of relevant factors. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

Courts in the Third Circuit apply factors articulated by the panel in *Jumara v. State Farm Ins. Co.*, which include private and public considerations. *See Jumara*, 55 F.3d 873, 879–80 (3d Cir. 1995). The private factors are:

> [1] Plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claims arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

*Id.* at 879 (citations omitted). The public factors are:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). Even if the parties stipulate to transfer, courts still apply the *Jumara* factors because the initiating court has discretion pursuant to § 1404. *See Orndorff v. Ford Motor Co.*, 2020 WL 1550760, at *1–4 (E.D. Pa. Mar. 31, 2020).

### 1. The *Jumara* private factors favor transfer.

The *Jumara* private factors weigh in favor of transfer to the Western District of Texas. When considering the parties' forum preferences, "[a] plaintiff's choice of forum is not dispositive." *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 423 (E.D. Pa. 2019). "Moreover, 'the existence of a related action in another district is a sound reason for favoring transfer when the venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum.'" *Id.* (quoting *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009)). In fact, courts in the Eastern

District of Pennsylvania have concluded that the presence of a related case in a transferee forum is alone sufficient to warrant transfer. *See Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at *5 (E.D. Pa. Aug. 25, 2015) (citing *Schiller–Pfeiffer, Inc. v. Country Home Prods., Inc.*, at *8 (E.D. Pa. Dec. 1, 2004); *see also Transcore, LP v. Mark IV Indus. Corp.*, 2009 WL 3365870, at *6 (E.D. Pa. Oct. 15, 2009) ("[T]he presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other Jumara factors . . . would suggest the opposite.") (internal quotation marks omitted).

Even though the existence of the Oracle Litigation is—under well-established precedent—on its own sufficient to justify transfer, the other private *Jumara* factors likewise are either positive or neutral. As already stated above, despite being resident in this District, Penn believes this litigation, or any claims alleged in this litigation relating to the Oracle Incident, properly belong in the Western District of Texas. First, in addition to not being a dispositive factor, Plaintiffs' choice of forum in this class action is given less deference. *Rauhala v. Greater N.Y. Mut. Ins. Inc.*, 2022 WL 16553383, at *2 (E.D. Pa. Oct. 31, 2022) (stating that in class actions "the plaintiff's choice is given less deference because the potential class members are scattered throughout numerous states"). Second, because Plaintiffs' claims relating to the Oracle Incident arose in the Western District of Texas where Oracle is headquartered, that factor weighs in favor of transfer. *See id.* at *3 (finding that in a data breach action the place where the claim arose was where the defendant was headquartered). Third, the factor considering the convenience of the parties weighs in favor of transfer because Penn will assume the vast bulk of the discovery burden and litigating similar actions in different districts would be duplicative and costly. *See Phoenix Ins. Co.*, 381 F. Supp. 3d at 423–24. The remaining factors are neutral. At this time, the convenience of non-party witnesses is neutral because there are no readily identified non-party witnesses who will be

9

unavailable for trial. The factor considering the location of books and records is neutral since most of the records in this action will be electronic given the data aspect of this case. *Id.* at 424 ("Plainly, given the ubiquity of electronically stored documents, this factor is neutral.").

### 2. The *Jumara* public factors favor transfer.

Almost all of the *Jumara* public factors—*e.g.*, enforceability, interest in resolving local controversies at home, the relative public policies of the fora—are either inapplicable or neutral. But the "practical considerations that could make the trial easy, expeditious, or inexpensive" strongly favor transfer to the Western District of Texas. Foremost among these "practical considerations" favoring transfer is the avoidance of costly and duplicative litigation. Where there are related cases in other districts, courts have found that "[a]voiding duplicative litigation furthers judicial and lawyer efficiency, as well as consistency of result." *Id.* The Supreme Court has made clear that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) (affirming transfer to a district with a related case).

That is the precise situation here. The claims asserted in this matter relating to the Oracle Incident and the Oracle Litigation arise from the same pattern of facts. Moreover, these cases bring claims for negligence, and seek to certify a nationwide class comprised of people who allegedly had their information compromised in the Oracle Incident. And, the Oracle Litigation is further advanced and makes complete relief possible for Plaintiffs because Oracle is a named defendant along with Penn.

To allow this case to proceed simultaneously with the overlapping class action pending in the Western District of Texas would result in a massive waste of time, energy, and money. The

parties separately would have to litigate numerous overlapping issues, such as the sufficiency of the pleadings, the scope of discovery, dispositive motions, and class certification.  Likewise, multiple federal judges would need to learn the facts and legal issues surrounding the Oracle Incident, resolve dispositive motions and discovery disputes, and oversee the cases.  This, in turn, would result in duplication of effort, needless expenditure of judicial resources, and potentially conflicting rulings on legal issues.

To avoid this result, and secure the undeniable judicial efficiencies that will be gained by litigating this case in the Western District of Texas, this case should be transferred.  Alternatively, any claims relating to the Oracle Incident should be severed and transferred to the Western District of Texas.  Because The Lanier Group of Three recognize this, they are better suited to represent the class as interim lead counsel.

### III.  CONCLUSION

For these reasons, Penn respectfully submits that the Court appoint Mark Lanier, Gary M. Klinger, and Jeff Ostrow as interim lead co-counsel as proposed in Dkt. No. 51.

Dated: February 18, 2026

Respectfully submitted,

/s/ Gregory T. Parks
MORGAN, LEWIS & BOCKIUS LLP
Gregory T. Parks
Kristin M. Hadgis
Terese M. Schireson
Shawn F. Summers
2222 Market Street
Philadelphia, PA  19103-3007
Tel: 215.963.5000
gregory.parks@morganlewis.com
kristin.hadgis@morganlewis.com
terese.schireson@morganlewis.com
shawn.summers@morganlewis.com

*Attorneys for Defendant The Trustees of the University of Pennsylvania*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system.


Dated: February 18, 2026                                          */s/ Gregory T. Parks*
                                                                                    Gregory T. Parks